CITY OF HOUSTON, Appellant,

v.

Feliciano MORUA and Silvia Morua,
Individually and as Next Friends
of M.M., a Minor, Appellees.

No. 01–97–01128–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

July 9, 1998.

Rehearing Overruled Sept. 24, 1998.

Laura Anne Coats, Houston, for Appellant.

Roy Huddle, Howard H. Singleton, Houston, for Appellees.

Before MIRABAL, WILSON and TAFT, JJ.

## OPINION

TAFT, Justice.

This case involves an interlocutory appeal from the trial court's refusal to grant a motion to dismiss for lack of subject matter jurisdiction filed by appellant, the City of Houston. We address whether the 1995 legislative amendments to the Texas Tort Claims Act and the recreational use statute found in the Civil Practice and Remedies Code deprived the trial court of subject matter jurisdiction over claims on behalf of a child bitten by a wolf at the city zoo. We affirm.

## Factual Background

On March 31, 1996, M.M., a three-year-old child, visited the Houston Zoological Gardens with his family. While viewing the Mexican wolf exhibit, M.M. went over or through a wooden fence and placed his hand into the exhibit through a chain-link fence. He was bitten by one of the wolves, losing one finger and portions of two others.

## Procedural Background

Appellees, M.M.'s parents, individually, and as next friend of M.M., (the Moruas) initially brought claims against the City of Houston (the City) based on strict liability, negligence, gross negligence, and attractive nuisance. The City filed a motion to dismiss for lack of subject matter jurisdiction, claiming the Moruas' petition failed to show that the City had waived governmental immunity,

thereby allowing the suit to be brought under the Texas Tort Claims Act (the Act). *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.001–.109 (Vernon 1997 & Supp.1998). The Moruas filed an amended petition alleging, in addition to their earlier claims, that the City took on duties and responsibilities outside its governmental functions, and, therefore, was liable under the common law notwithstanding the limitations on liability found in the Act. The trial court denied the City's motion, and the City brought this interlocutory appeal. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(8) (Vernon Supp.1998) (allowing for an interlocutory appeal from a grant or denial of a plea to the jurisdiction filed by a governmental unit).

## Standard of Review

A plea to the court alleging lack of jurisdiction is proper to challenge a suit filed against a governmental entity when it is apparent from the pleadings on file that the plaintiff does not have standing to sue. *Liberty Mutual Ins. Co. v. Sharp*, 874 S.W.2d 736, 739 (Tex.App.—Austin 1994, writ denied). To invoke the subject matter jurisdiction of the trial court, the pleader must allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). In this case, the Act vests the Court with subject matter jurisdiction, and the plaintiff must plead the presence of such jurisdiction on the face of the petition. *See Vincent v. West Texas State Univ.*, 895 S.W.2d 469, 472 n. 3 (Tex. App.—Amarillo 1995, no writ). When reviewing a trial court's order *dismissing* a cause for want of jurisdiction, Texas appellate courts construe the pleadings in favor of the plaintiff and look to the pleader's intent. *Texas Ass'n of Bus.*, 852 S.W.2d at 446. We conclude that the same standard should guide us in reviewing an interlocutory appeal of a trial court's *denial* of a motion to dismiss for lack of subject matter jurisdiction.[1]

---

1. The Moruas suggest that we adopt the standard of review applied to a sua sponte review of jurisdiction on appeal, in which we review the entire record, not only the pleadings, to determine if any evidence supports jurisdiction. *Tex-*

*as Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). However, such a standard is necessary on sua sponte review because the plaintiff, having not been presented with a motion to dismiss raising the lack of

## Subject Matter Jurisdiction
## Under the Act

In one point of error, the City contends that the trial court erred in denying its motion to dismiss because the Moruas have failed to plead a cause of action within the waiver of governmental immunity created by the Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.001–.109 (Vernon 1997 & Supp.1998). To explain the context of this dispute, we begin with an overview of the relevant statutes.

Under the common law, a municipality is immune from liability only for its governmental conduct, not its proprietary conduct. *See Simons v. City of Austin*, 921 S.W.2d 524, 529 (Tex.App.—Austin 1996, writ denied). The legislature has statutorily defined almost every function of a municipality, including the operation of a zoo, as governmental, thus shrouding it with immunity from liability. TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(13) (Vernon Supp.1998). However, under the Act, a governmental unit waives its immunity for governmental functions to the extent it would be liable for personal injuries caused by a condition or use of tangible personal or real property if it were a private person. TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1997). Subchapter C of the Act sets forth several exceptions to the waiver of immunity found in section 101.021. TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.051–.065 (Vernon 1997 & Supp.1998).

Chapter 75 of the Civil Practices and Remedies Code, commonly known as the recreational use statute, provides for limited liability to land owners who permit others to use their property for recreational purposes. TEX. CIV. PRAC. & REM.CODE ANN. §§ 75.001–.004 (Vernon 1997 & Supp.1998). The statute specifies the standard of care, lower than that found at common law, owed by a landowner to those he allows on his property for recreational purposes. TEX. CIV. PRAC. & REM.CODE ANN. § 75.002(b) (Vernon 1997 &

jurisdiction, had no chance to amend its pleadings in the trial court. *See id.* In this case, a motion to dismiss was filed by the City, and the Moruas amended their petition.

Supp.1998) (stating that landowner must meet standard of care owed to a trespasser).

In 1994, the supreme court addressed an apparent conflict between the Act and the recreational use statute arising when a governmental entity grants implied permission to use its property for recreational purposes. *See City of Dallas v. Mitchell*, 870 S.W.2d 21, 22 (Tex.1994). Section 101.022 of the Act specified that, for claims arising from premise defects, the governmental unit owes to the claimant the duty that a private person owes to a *licensee* on private property, unless the claimant pays for the use of the premises. TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(a) (Vernon 1997); *Mitchell*, 870 S.W.2d at 22. However, the recreational use statute provided that, when a real property owner gives permission to others to enter his land for recreational purposes, he owes to them only the duty owed a *trespasser.* TEX. CIV. PRAC. & REM.CODE ANN. § 75.002(c)(2) (Vernon 1997). The Mitchells sued the City of Dallas for injuries sustained by their son when he fell from his bike into a creek bed in a public park owned and maintained by the City. *Mitchell*, 870 S.W.2d at 21. The City of Dallas argued that the recreational use statute applied and, therefore, it owed the Mitchell's son only the duties owed to a trespasser. *Id.* at 22. In resolving the conflict, the Supreme Court resorted to rules of statutory construction and concluded that the recreational use statute did not apply to governmental entities because the standard of care owed to recreational users on government property is specified in section 101.022 of the Act. *Mitchell*, 870 S.W.2d at 23.

In 1995, the legislature amended both the Act and the recreational use statute. Act of May 26, 1995, 74th Leg., R.S., ch. 520, 1995 Tex. Gen. Laws 3276, 3276–77 (amending TEX. CIV. PRAC. & REM.CODE ANN. §§ 75.003, 101.058). That enactment amended section 75.003 of the recreational use statute, dealing with the application and effect of chapter 75, as follows: [2]

2. Italicized language was added to the statute; stricken language was deleted.

SECTION 2. Section 75.003, Civil Practice and Remedies Code, is amended by amending Subsection (c) and adding Subsections (e), (f), and (g) to read as follows:

(c) *Except for a governmental unit, this* [This] chapter applies only to an owner, lessee, or occupant of real property who:

(1) does not charge for entry to the premises; [or]

(2) charges for entry to the premises, but whose total charges collected in the previous calendar year for all recreational use of the entire premises of the owner, lessee, or occupant are not more than twice the total amount of ad valorem taxes imposed on the premises for the previous calendar year; *or*

*(3) has liability insurance coverage in effect on an act or omission described by Section 75.004(a) and in the amounts equal to or greater than those provided by that section.*

*(e) Except as otherwise provided, this chapter applies to a governmental unit.*

*(f) This chapter does not waive sovereign immunity.*

*(g) To the extent that this chapter limits the liability of a governmental unit under circumstances in which the governmental unit would be liable under Chapter 101, this chapter controls.*

The Act was amended as follows:

SECTION 4. Subchapter C, Chapter 101, Civil Practice and Remedies Code, is amended by adding Section 101.058 to read as follows:

*Sec. 101.058. LANDOWNER'S LIABILITY. To the extent that Chapter 75 limits the liability of a governmental unit under circumstances in which the governmental unit would be liable under this chapter, Chapter 75 controls.*

Act of May 26, 1995, 74th Leg., R.S., ch. 520, 1995 Tex. Gen. Laws 3276, 3276–77 (amending TEX. CIV. PRAC. & REM.CODE ANN. §§ 75.003, 101.058). Based on these amendments to both the Act and the recreational use statute, the City contends that the Moruas' claims are controlled by the recreational use statute, and that, as amended, section 75.003(f) specifically states that chapter 75

does not waive sovereign immunity. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 75.003(f), 101.058 (Vernon 1997). To the contrary, the Moruas contend that section 75.003(f) did not *abolish* the waiver of immunity found in section 101.021(2), but, rather, *limited* a governmental unit's liability created under section 101.021(2). *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 75.003(f), 101.058. These conflicting interpretations give rise to the present dispute.

In construing a statute, our primary objective is to give effect to the legislature's intent. *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 438 (Tex.1997). When a statute is clear and unambiguous, courts need not resort to rules of construction or extrinsic aids to construe it, but should give the statute its common meaning. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex.1997). The legislature's intent is determined from the plain and common meaning of the words used, giving effect to all of the terms of a statute. *Id.*

In this case, the Moruas assert that the wolf exhibit was a dangerous condition as contemplated by section 101.021(2) of the Act and that their claims fall under the waiver of governmental immunity created by that section. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2). The City correctly points out that, for a claim to be brought against a governmental entity under the Act, a litigant's claims must not fall within subchapter C of the Act, which sets forth several exceptions to the waiver of immunity found in section 101.021. The City argues that, based on the addition of section 101.058 as a subchapter C exception in 1995, when a litigant's section 101.021(2) claim arises from injuries sustained on government land made available to the public for recreational use, the recreational use statute controls. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 75.001–.004. The City contends that House Bill 2085 was an attempt by the legislature to alter the result in *Mitchell* and ensure that the recreational use statute did apply to governmental entities. The City further argues that, because the recreational use statute controls in such a situation, section 75.003(f) bars any liability for the City in light of that section's express

language that, "This chapter does not waive sovereign immunity." TEX. CIV. PRAC. & REM. CODE ANN. § 75.003(f). By enacting the 1995 amendments, the City alleges, the legislature intended to encourage governmental entities to provide the public with recreational facilities such as parks and zoos without the fear of liability. While we agree that the 1995 amendments were meant to encourage governmental entities to provide recreational facilities to the public, we disagree with the City's conclusion that the legislature intended to abolish all governmental unit liability in connection with such public facilities.

■ The express wording of both section 101.058 of the Act and section 75.003(g) of the recreational use statute undermine the City's argument. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 75.003(g), 101.058 (Vernon 1997). Both sections clearly state that, to the extent the recreational use statute *limits* the liability of a governmental unit under circumstances in which the governmental unit *would be liable* under the Act, the recreational use statute, and its diminished standard of care, controls. *See id.* A plain reading of both sections reveals that, once it is determined that a governmental entity is liable under the Act, the recreational use statute may then operate to limit, not abolish, that liability if the facts of a particular case support its application. *See id.* According to the City, the legislature intended

to abolish governmental unit landowner liability through the addition of section 75.003(f), which states that "This chapter does not waive sovereign immunity." TEX. CIV. PRAC. & REM.CODE ANN. § 75.003(f). However, based on the plain meaning of sections 75.003(g) and 101.058 outlined above, an analysis of a governmental unit landowner's liability does not reach the recreational use statute *unless* it is first determined that the litigant's claims fall under the waiver of immunity created by the Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 75.003(g), 101.058. Therefore, section 75.003(f) merely emphasizes that the recreational use statute limits *preexisting* liability, and does not, in and of itself, waive sovereign immunity or abolish the waiver of liability found in the Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 75.003(f). It would be nonsensical to assume that the legislature, by adding two separate provisions stating that the recreational use statute *limits* the liability of a governmental unit landowner, intended to abolish the waiver of governmental immunity created by section 101.021(2) of the Act.[3] *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 75.003(g), 101.058. We hold that the recreational use statute does not bar the Moruas' claims made pursuant to section 101.021(2) of the Act, and that the trial court did not err in denying the City's motion to dismiss for lack of subject matter jurisdiction.[4]

We overrule the City's sole point of error.

3. Although we hold that the statutory provisions at issue in this case are unambiguous, and, therefore, can be interpreted by the plain meaning of their express terms, we note that materials from the legislative record support our conclusion. The bill analysis prepared for House Bill 2085 by the House Committee on Civil Practices states that "The bill further provides that governmental entities will be treated as a landowner under this chapter as prior to *Dallas v. Mitchell* . . . ." As previously discussed, the *Mitchell* court held that the recreational use statute did not apply to governmental unit landowners because the applicable standard of care for such entities was set forth in the Act. Prior to *Mitchell*, several courts of appeals held that the recreational use statute did operate to limit the liability of governmental unit landowners imposed by the Act. *See Martinez v. Harris County*, 808 S.W.2d 257, 259 (Tex. App.—Houston [1st Dist.] 1991, writ denied); *Tarrant County Water Control & Imp. Dist. No. 1 v. Crossland*, 781 S.W.2d 427, 437 (Tex.App.— Fort Worth 1989, writ denied). Therefore, prior to *Mitchell*, the recreational use statute had been

interpreted to *limit*, not *abolish*, governmental landowner liability imposed by the Act. *See Martinez*, 808 S.W.2d at 259; *Tarrant County*, 781 S.W.2d at 437. It is clear from the plain language of House Bill 2085 and the House bill analysis that the legislature intended to overrule the *Mitchell* decision and ensure that the recreational use statute would apply to limit, not abolish, the preexisting liability of those entities under the Act.

4. In their brief, the Moruas argue in the alternative that, if we were to find that the recreational use statute did abolish the City's liability under the Act, their claims do not fall within the terms of the recreational use statute because the statute does not apply to an invitee of a zoo. Further, the Moruas argue that, if we were to accept the proposition that the recreational use statute does apply to an invitee of a zoo, their claims of attractive nuisance, gross negligence, and strict liability are not affected by the statute. Because we hold that the recreational use statute does not

### Cross–Point Seeking Sanctions

 Pursuant to Rule of Appellate Procedure 45, the Moruas urge this court to impose sanctions against the City for bringing a frivolous appeal. *See* TEX.R.APP. P. 45. The Moruas claim that the City's argument has no basis in statutory or common law and that the City has abused the recently-enacted provision allowing for an interlocutory appeal of a plea to the jurisdiction in an attempt to increase the Moruas' costs and eliminate the pending trial setting. Appellate sanctions will be imposed only if the record clearly shows the appellant has no reasonable expectation of reversal, and the appellant has not pursued the appeal in good faith. *Finch v. Finch*, 825 S.W.2d 218, 226 (Tex.App.—Houston [1st Dist.] 1992, no writ) (interpreting former Tex.R.App. P. 84). If the argument on appeal, even if it fails to convince the court, has a reasonable basis in law and constitutes an informed, good-faith challenge to the trial court's judgment, sanctions are not appropriate. *General Elec. Credit Corp. v. Midland Cent. Appraisal Dist.*, 826 S.W.2d 124, 125 (Tex.1991) (interpreting former Tex.R.App. P. 84). The Moruas point to the City's brief as evidence in the record of the frivolous nature of the appeal.

In this case, the City argues that, based on recent statutory amendments, the Moruas' claims against it were barred. No Texas decision has addressed the particular argument raised by the City. Although our holding is adverse to the City's position, we do not find the City's appeal frivolous as that term is contemplated by rule 45. *See* TEX. R.APP. P. 45. After reviewing the entire record, we overrule the Moruas' cross-point.

### Conclusion

We uphold the trial court's denial of the City's motion to dismiss for lack of subject matter jurisdiction.

abolish the City's liability under the Act, we do not reach the Moruas' alternative arguments.