TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00676-CV






City of Austin, Appellant


v.


Louis Silverman, M.D., Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT

NO. D-1-GN1-03789, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Appellee Louis Silverman, M.D., sued the City of Austin, appellant, under the
Texas Tort Claims Act ("the Act"), see Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.109
(West 2005 & Supp. 2008), alleging that he was injured in a fall on a downtown sidewalk. 
Silverman asserted a premises-defect claim and stated that the City's immunity from suit was waived
under the Act. (1) See id. § 101.022 (West Supp. 2008). The City filed a plea to the jurisdiction and
motion for summary judgment, arguing that Silverman was not truly asserting a premises-defect
claim but instead was complaining of the sidewalk's design, which meant the City retained its
immunity from suit. See id. § 101.056 (West 2005). The trial court denied the City's plea and
motion, and the City filed this interlocutory appeal. See id. § 51.014(a)(8) (West 2008); Texas Dep't
of Criminal Justice v. Simons, 140 S.W.3d 338, 349 (Tex. 2004) (interlocutory appeal proper
regardless of whether jurisdictional argument is presented by plea to jurisdiction or motion for
summary judgment). We reverse the trial court's order and remand to allow Silverman the
opportunity to replead.

 In reviewing a trial court's decision on a plea to the jurisdiction, we first ask whether
the plaintiff alleged facts affirmatively demonstrating the court's jurisdiction to hear the case. Texas
Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004). We review the trial court's
determination on a plea to the jurisdiction de novo, construing the pleadings liberally and looking
to the plaintiff's intent. Id. When a plea to the jurisdiction challenges whether the trial court has
subject-matter jurisdiction under the facts as alleged by the plaintiff, the trial court must consider
relevant evidence submitted by the parties. Id. at 227. If the pleadings and, if applicable, evidence
show an insufficient jurisdictional basis but do not affirmatively demonstrate incurable jurisdictional
defects, the plaintiff should be allowed to amend his petition. Id. at 226-27. Only when the
pleadings affirmatively negate the existence of jurisdiction should a plea to the jurisdiction be
granted without allowing an opportunity to amend. Id. at 227.

 Under the Act, a governmental unit is liable for injuries "caused by a condition or use
of . . . real property" if the unit would be liable if it were a private person, and the unit's immunity
from suit is waived "to the extent of liability created by this chapter." Tex. Civ. Prac. & Rem. Code
Ann. §§ 101.021(2), .025 (West 2005). If a claim arises from a premise defect and the plaintiff did
not pay to use the premises, the governmental unit owes "only the duty that a private person owes
to a licensee on private property." Id. § 101.022. A municipality is liable for damages "arising from
its governmental functions," id. § 101.0215(a) (West 2005), but the Act does not waive immunity
for claims based on a governmental unit's failure "to perform an act that the unit is not required by
law to perform" or its "decision not to perform an act or . . . its failure to make a decision on the
performance or nonperformance of an act if the law leaves the performance or nonperformance of
the act to the discretion of the governmental unit." Id. § 101.056. 

 In his amended petition, Silverman claimed that the City's immunity from suit was
waived under the Act because his injuries were caused by a premises defect on City property. 
Silverman alleged that he was walking on a sidewalk downtown at about 10:00 p.m. He had never
been on this section of sidewalk before. According to his petition, as he proceeded along the
sidewalk, he "saw other pedestrians walking uphill towards him," stepped forward, and fell more
than twelve inches, injuring himself permanently. In his deposition testimony, Silverman explained
that he saw that the people approaching him on his left were walking up stairs, so he stepped down,
expecting to find a step, and instead fell because "[t]here was no stair in the area that I stepped on." 
He said, "All I know is I stepped off into space where I thought there was going to be stairs." (2) The
City agrees that there were no warning signs pertaining to the stairs, nor was there a railing or lights
illuminating the stairs in particular, although the City states that "street lighting existed in the area." 
Silverman alleged that the City, through its manager of the Street and Bridge Division, was aware
of the dangerous condition, which Silverman calls a "drop-off." Silverman further argued that the
City had a duty to warn him that the stairs did not continue all the way across the width of the
sidewalk or to make it reasonably safe and that its failure to do either proximately caused his injuries.

 In its plea, the City raised several issues, including arguing that Silverman was
asserting claims related to the design of the sidewalk, which was "conduct that is discretionary such
as the designs of public works or decisions about installing safety features" and for which the City
retained its immunity from suit. Because we agree that Silverman's claims arise from the design of
the sidewalk, we hold that the City's immunity is not waived under the Act.

 The Act's waiver of a governmental unit's immunity from suit does not extend to
claims arising out of discretionary decisions. See id. § 101.056(2); Texas Dep't of Transp.
v. Ramirez, 74 S.W.3d 864, 866-67 (Tex. 2002). "An act is discretionary if it requires exercising
judgment and the law does not mandate performing the act with such precision that nothing is left
to discretion or judgment." State v. Rodriguez, 985 S.W.2d 83, 85 (Tex. 1999). Designs of public
works and decisions of whether to install safety features are discretionary decisions for which a
governmental unit may not be sued. See Ramirez, 74 S.W.3d at 867 (State retained immunity for
claims related to design of highway and failure to install safety features); Rodriguez, 985 S.W.2d at
86 (State retained immunity for claims related to design of detour and warning signs); University of
Tex. Health Sci. Ctr. v. Bruen, 92 S.W.3d 24, 27 (Tex. App.--San Antonio 2002, pet. denied)
(university retained immunity for claims related to design of auditorium ramp, including that there
was no difference in color between ramp's carpet and carpet on auditorium's floor and that university
failed to warn of dangerous condition with railing or other device to prevent stepping off side of
ramp); Mogayzel v. Texas Dep't of Transp., 66 S.W.3d 459, 465-66 (Tex. App.--Fort Worth 2001,
pet. denied) (State retained immunity from claims related to lack of barriers or guardrails on highway
as originally designed); Hur v. City of Mesquite, 893 S.W.2d 227, 235 (Tex. App.--Amarillo 1995,
writ denied) (city retained immunity from claims that city had duty to install sidewalks, crosswalks,
and pedestrian signals). In other words, "a governmental entity is immune from liability if an injury
results from the formulation of policy" but not when the "injury is caused by the negligent
implementation of that policy." Mitchell v. City of Dallas, 855 S.W.2d 741, 745 (Tex. App.--Dallas
1993), aff'd, 870 S.W.2d 21 (Tex. 1994) (city retained immunity from claims related to original
design of retaining wall but not from claims of negligent construction and maintenance of wall). 
"This distinction is often stated in terms of actions taken at the planning or policy-making level,
which are immune, and actions taken at the subordinate or operational level, which are not immune." 
Id. Unlike design decisions, which are discretionary, maintenance or construction activities are
usually considered not to be discretionary, and thus a governmental unit would not be immune from
liability for injuries arising from such actions. Id.

 Silverman asserted in his petition that, "[i]ncredibly, there was absolutely no warning
or indicator that there was a drop from the alleyway/curb to the sidewalk." In his response to the
City's plea to the jurisdiction, he alleged that there was "no handrail to assist pedestrians that
encounter this 'drop-off'" and that "this 'drop-off' occurs in an area where there is no wheelchair
ramp to accommodate this 'drop-off.'" He also said that "the 'drop-off' as it existed on the night
[in question] was a condition that in all respects was a defect." Although Silverman asserted that
in Texas, the duty to warn of or make reasonably safe a premise defect was not discretionary, he did
not directly address the City's contention that the design of the curb was a discretionary function for
which the City maintained its immunity. In his deposition, Silverman said he fell because "[t]here
was no stair in the area that I stepped on." Counsel for the City asked him, "Other than the design
being a stair, was there any other reason that you know of, lighting--except lighting, that contributed
to your fall, to your accident?" (3) Silverman answered that he did not "know much about designing
stairs or sidewalks" but that "there were no lights, no warning signs, wasn't any yellow paint in the
area to indicate a possible hazard. There was nothing other than to make it appear a continuation of
what else was there." Later in his deposition he said, "I am going to specify that I am no expert when
it comes to sidewalk design. The step wasn't where I thought it was going to be, where I expected
it to be." Joe Ramos, division manager for the City's Street and Bridge Division, testified that he
had done a search of records dating to the early 1980s and "couldn't find any records on who
[constructed] that sidewalk." He said that before a 1999 City code, a property owner was supposed
to be responsible for building and maintaining a sidewalk, but that not all pre-1999 sidewalks were
built by the property owners and that the City built some of the pre-1999 sidewalks downtown. He
also stated that it was possible that the steps had been there since 1969 and that the adjacent building
was designated a historic site. Ramos testified that lighting and a railing was typically "part of the
design" of the sidewalk or street. 

 Although Silverman stated that he was bringing a premises-defect claim, his
pleadings and deposition testimony establish that he was complaining about the design of the
sidewalk, the lighting in the area, and the City's decision not to install a railing or warning sign. 
Silverman did not assert that the curb or stairs were poorly maintained, eroded, or chipped. He
claimed only that the stairs should have stretched across the entire width of the sidewalk or that the
City should have provided a safety feature such as a handrail, warning sign, or lighting. Silverman
cannot rely on artful pleading to establish a waiver of immunity where the law provides none. See
Bell v. City of Dallas, 146 S.W.3d 819, 823-24 (Tex. App.--Dallas 2004, no pet.) (plaintiffs "cannot
avoid the effect of governmental immunity by creative pleading"); Seamans v. Harris County Hosp.
Dist., 934 S.W.2d 393, 395 (Tex. App.--Houston [14th Dist.] 1996, no writ) ("Causation is the key,
and creative pleading cannot replace the rule of immunity with its exception."); Townsend
v. Memorial Med. Ctr., 529 S.W.2d 264, 267 (Tex. Civ. App.--Corpus Christi 1975, writ ref'd
n.r.e.) ("Although the appellant contends on appeal that the rape, an intentional tort, is not the gist
of her complaint, her petition leaves no other fair construction possible."); see also
Gonzales v. Bexar County, No. 04-97-00679-CV, 1998 Tex. App. LEXIS 3276, at *7-8
(Tex. App.--San Antonio May 29, 1998, no pet.) (not designated for publication) ("[c]ourts should
focus on the factual allegations in the pleadings to determine applicability of sovereign immunity,
and need not accept the legal theories alleged in the pleadings as valid"; "[a]rtful pleading of facts
cannot bring excluded claims within sovereign immunity waiver"). When we consider the facts as
alleged by Silverman, his claims are related solely to the City's decisions about whether to install
safety features such as lighting or a railing or to the design of the curb and stairs, not to their
maintenance or construction. See City of Fort Worth v. Gay, 977 S.W.2d 814, 817
(Tex. App.--Fort Worth 1998, no pet.) (immunity waived if governmental unit negligently
implements discretionary decision); Mitchell, 855 S.W.2d at 745 (same). Therefore, under
section 101.056, the City retains its immunity from suit for Silverman's claims. (4) See Ramirez,
74 S.W.3d at 867; Bruen, 92 S.W.3d at 26-27; Hur, 893 S.W.2d at 235.

 Silverman also argues that because the City could not proffer plans showing that the
steps were constructed as designed, the City could not show that this was an issue of design rather 
than negligent construction. However, Silverman did not allege and the record contains no evidence
that the stairs were negligently constructed, had been modified at some point in the past, or were
anything other than in their original condition. Ramos testified that the stairs were built before the
early 1980s, perhaps as early as 1969, and that they were either built by the owner of the adjacent
building or through a City project. Our sister court has explained that a governmental unit need not
produce evidence "of a meeting or formal decision in which the City decided to design (or adopt a
particular design of) the road in a particular fashion or formally decided on whether and what safety
features to install." City of Mission v. Cantu, 89 S.W.3d 795, 810-11 (Tex. App.--Corpus Christi
2002, no pet.). The question "is not whether the governmental unit 'formally' exercised its
discretionary power but rather whether the function in question was one which was within the scope
of the governmental [unit's] discretionary power, that is, not mandatory by law." Id.

 Under section 101.056 of the civil practice and remedies code, the City is immune
from Silverman's claims related to his fall. We therefore reverse the trial court's order. Because the
evidence does not show that Silverman's suit suffers from an incurable jurisdictional defect, we
remand the cause to the trial court to allow Silverman an opportunity to replead. See Miranda,
133 S.W.3d at 226-27.


 __________________________________________

 David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Reversed and Remanded

Filed: May 21, 2009
1. In his original petition, Silverman asserted that the City had been "negligent by failing to
operate and maintain the sidewalk in question in a safe manner" and that it had breached its "duty
to exercise reasonable care to protect individuals . . . from dangerous conditions and activities
occurring on the premises." After the City filed its plea, Silverman amended his petition to specify
that he was alleging a claim for negligence due to a premises defect. He alleged that in the area
where he fell, a "sudden drop from the curb/alley to the sidewalk constituted a premises defect, the
'drop-off', [sic] which posed an unreasonable risk of harm." He stated that the City owed Silverman
the same duties owed to a licensee, namely the duties to warn of or make reasonably safe "a known
dangerous condition" of which Silverman was unaware and not to injure him "through willful,
wanton, or grossly negligent conduct."
2. Photographs introduced into the record during the hearing on the City's plea to the
jurisdiction show that the area in question is a curb where an alleyway meets a street. Southbound
pedestrians proceed on a wide sidewalk, down a slight ramp to the alley's surface, and across the
alley. The alley's elevation is approximately twelve inches higher than the sidewalk that continues
along the street. A curb separates the alley from the sidewalk below, starting from the building side
of the sidewalk and curving to meet a raised curb that runs along the street side of the sidewalk. 
There is one stair across most of the width of the sidewalk. It does not, however, span the entire
sidewalk. The stair tapers and ends just before connecting with the curved curb, perhaps
eighteen inches from the street.
3. Silverman's attorney objected to the form of the City's question.
4. A governmental unit also retains immunity from claims arising from the failure to place
"a traffic or road sign, signal, or warning device" resulting from the unit's discretionary action or
from the absence or malfunction of such a sign or signal (unless the malfunction or absence was not
corrected within a reasonable time after the unit was notified of the problem). Tex. Civ. Prac.
& Rem. Code Ann. § 101.060(a) (West 2005). Silverman argues that this section does not apply to
this case because he was injured on a sidewalk and because section 101.060 only applies to warning
signs or devices on a roadway. Due to our resolution of this case, we need not address this issue.