McMillan v. Parker 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00198-CV







Kay McMillan, Appellant



v.



Richard Parker, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 94-07408, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING






 Appellant Kay McMillan sued appellee Richard Parker to recover damages for
personal injuries allegedly sustained as a result of Parker's negligence. Based on its interpretation
of the Texas "recreational-use statute," Tex. Civ. Prac. & Rem. Code Ann. §§ 75.001-.003 (West
1986 & Supp. 1995), the trial court rendered summary judgment in favor of Parker. McMillan
contends on appeal that the trial court erred in its application of the statute to the facts of this case
and that material issues of fact exist with regard to the duties Parker owed her. We will reverse
the summary judgment and remand the cause.


FACTUAL AND PROCEDURAL BACKGROUND


 After spending a Friday evening with Parker, McMillan accepted an invitation to
accompany him to his ranch the following day to spend time together and to view wild boar on
the property. Parker had originally intended to leave for the ranch early the next morning, but
postponed his departure until the afternoon in order to include McMillan in his plans. On the trip
to the ranch with McMillan, Parker purchased groceries in contemplation of entertaining his guest
for the weekend. During a tour of the premises taken upon their arrival, McMillan and Parker
climbed a tree to better observe the wild boar. After sitting in the tree for a period of time,
McMillan lost her balance and fell, sustaining serious injuries to her feet and back.

 McMillan brought suit against Parker alleging he breached his duties owed to her
as a social guest on his property. Parker moved for summary judgment on the basis of Chapter
75 of the Texas Civil Practice and Remedies Code (hereinafter "Code"). The relevant statutory
provisions limit the liability of a landowner as to persons permitted on the property for the express
purpose of recreation:


(a)  An owner, lessee, or occupant of agricultural land:

 (1) does not owe a duty of care to a trespasser on the land; and

 (2) is not liable for any injury to a trespasser on the land, except for wilful or
wanton acts or gross negligence by the owner, lessee, or other occupant of
agricultural land.

(b)  If an owner, lessee, or occupant of agricultural land gives permission to
another to enter the premises for recreation, the owner, lessee, or occupant, by
giving the permission does not:

 (1) assure that the premises are safe for that purpose;

 (2)owe to the person to whom permission is granted a greater degree of care
than is owed to a trespasser on the premises; or

 (3) assume responsibility or incur liability for any injury to any individual or
property caused by any act of the person to whom permission is granted.

(c)  If an owner, lessee, or occupant of real property other than agricultural land
gives permission to another to enter the premises for recreation, the owner, lessee,
or occupant, by giving the permission, does not:

 (1) assure that the premises are safe for that purpose;

 (2) owe to the person to whom permission is granted a greater degree of care
than is owed to a trespasser on the premises; or

 (3) assume responsibility or incur liability for any injury to any individual or
property caused by any act of the person to whom permission is granted.

(d)  Subsections (a), (b), and (c) shall not limit the liability of an owner, lessee, or
occupant of real property who has been grossly negligent or has acted with
malicious intent or in bad faith.


Code § 75.002 (West Supp. 1995). The Code defines "recreation" as "an activity such as hunting,
fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, cave
exploration, and waterskiing and other water sports." Code § 75.001(3).

 Parker argued that the duty of care he owed McMillan was limited by the statute
to that owed to a trespasser, that the evidence before the court did not support a claim of wilful
or wanton acts or gross negligence, and that he was therefore entitled to judgment as a matter of
law. Accepting this argument, the trial court granted summary judgment against McMillan.

 On appeal, McMillan argues first that the recreational-use statute is inapplicable
to this case and, second, that even if the statute does apply, fact issues exist as to whether Parker
was grossly negligent.



DISCUSSION


 The standards for reviewing a summary judgment are well established: (1) the
movant for summary judgment has the burden of showing that there is no genuine issue of
material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there
is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; (3) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985). The function of summary judgment is not to deprive litigants
of the right to trial by jury, but to eliminate patently unmeritorious claims and defenses. See
Gulbenkian v. Penn, 252 S.W.2d 929, 931 (Tex. 1952). 

 In her first point of error, McMillan argues that the recreational-use statute is
inapplicable under the facts of this case. Parker has the burden of establishing McMillan's
inclusion under the statute to uphold the trial court's summary judgment. In his brief, Parker
argues that the plain meaning of the statute limits a landowner's liability as to all recreational
users, without distinction. We disagree.

 We think the statutory limitation on liability was meant as an inducement for
owners of certain types of private land to allow members of the general public to use such lands
for recreational pursuits. The statute appears to have been intended as a limited exception to the
traditional common-law duties owed by landowners for the specific purpose of creating
recreational facilities for the general public. Transcripts of the debate over the 1981 amendment
on the floor of the House of Representatives support our conclusion. (1)
 The legislature obviously
considered the imposition of a lower standard of care for persons receiving the benefit of
recreational access an appropriate measure for allocating costs under the statute. 

 Even if the literal meaning of the statutory language supports Parker's position, the
legislative intent is too clearly contrary to permit such literalism:


[C]ourts are not bound by the literal meaning of words in the construction of
statutes, but when the intent and purpose of the Legislature is manifest from a
consideration of a statute as a whole, words will be restricted or enlarged in order
to give the statute the meaning which was intended by the lawmakers.


Bridgestone/Firestone, Inc. v. Glyn-Jones, 878 S.W.2d 132, 134 (Tex. 1994) (quoting Lunsford
v. City of Bryan, 297 S.W.2d 115, 117 (Tex. 1957)).

 An overly literal interpretation of the general terms used in the recreational-use
statute could arbitrarily and unreasonably subject all classes of persons legally entering onto
another's land to a lower standard of care. This would frustrate, rather than further, the statute's
objective. Such a construction would deprive some classes (e.g., social guests) of common-law
duties owed by a possessor of land, even though such guests do not benefit from the statute.

 Consequently, application of the statute to social guests would unjustly result in a
lower standard of care without providing any offsetting benefit. The statute does not give rise
to an increased opportunity for social guests to legally enter the property owned by their host. 
Thus, because of their relationship with the property owner, social guests are clearly not the
intended beneficiaries of the recreational-use statute.

 The First Court of Appeals in Houston recently reached the same conclusion in
Lipton v. Wilhite, 902 S.W.2d 598 (Tex. App.Houston [1st Dist.] 1995, writ denied). On
similar facts, the court in Lipton held that the recreational-use statute did not apply to social guests
engaging in recreational activities, because such an application would "emasculate the common-law duties that a possessor of land owes to his licensee without furthering the statute's purpose." 
902 S.W.2d at 600.

 In his attempt to justify including social guests under the statute, Parker directs our
attention to section 75.003(c) of the statute, which states:


This chapter applies only to an owner, lessee, or occupant of real property who:

 (1) does not charge for entry to the premises; or

 (2) charges for entry onto the premises, but whose total charges collected for
the previous calendar year for all recreational use of the entire premises of the
owner, lessee, or occupant are not more than twice the ad valorem taxes
imposed on the premises for the previous calendar year.


Code § 75.003(c). Parker argues that the limited inclusion of business invitees would naturally
implicate the inclusion of social guests since invitees are owed a higher legal duty. We do not
reach this conclusion. We believe that the purpose of the foregoing section was to expressly
prevent landowners who specialize in commercial recreation from wrongfully taking advantage
of the statute. This supplemental qualification prohibits limiting liability for those occupants who
benefit financially from persons entering the property for recreational purposes. The limited
application of the statute to owners who charge a nominal entrance fee (presumably to defray costs
of maintaining the property) rather than engaging in commercial recreation for profit is consistent
with the overall purpose of the statute: to create and preserve land that the general public may
use for recreational purposes. Section 75.003(c) should be interpreted in light of the statute in its
entirety. 

 In summary, McMillan entered the property with Parker as his social guest. We
conclude that, under the facts of this case, the nature of McMillan's relationship with Parker and
her purpose for entering the property exclude her from the operation of the recreational-use
statute. Since the statute does not apply to McMillan, she is not to be treated as a trespasser for
purposes of determining the duties owed to her by the landowner, Parker. Thus, she necessarily
had the status either of a licensee or an invitee. Whichever of those categories she occupied,
Parker's standard of care toward her was such that the evidence before this Court does not support
summary judgment.


CONCLUSION


 We hold the recreational-use statute inapplicable to this case and sustain point of
error one. In light of this holding, we need not address McMillan's second point of error. We
reverse the trial court's judgment and remand the cause to that court for further proceedings.



 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Jones and B. A. Smith

Reversed and Remanded

Filed: November 15, 1995

Publish
1.   Debate on Tex. H.B. 749 on the Floor of the House, 67th Leg., R.S. 1-3 (April 30,
1981) (transcript available from House Committee Coordinator).





SPAN STYLE="font-family: CG Times"> Consequently, application of the statute to social guests would unjustly result in a
lower standard of care without providing any offsetting benefit. The statute does not give rise
to an increased opportunity for social guests to legally enter the property owned by their host. 
Thus, because of their relationship with the property owner, social guests are clearly not the
intended beneficiaries of the recreational-use statute.

 The First Court of Appeals in Houston recently reached the same conclusion in
Lipton v. Wilhite, 902 S.W.2d 598 (Tex. App.Houston [1st Dist.] 1995, writ denied). On
similar facts, the court in Lipton held that the recreational-use statute did not apply to social guests
engaging in recreational activities, because such an application would "emasculate the common-law duties that a possessor of land owes to his licensee without furthering the statute's purpose." 
902 S.W.2d at 600.

 In his attempt to justify including social guests under the statute, Parker directs our
attention to section 75.003(c) of the statute, which states:


This chapter applies only to an owner, lessee, or occupant of real property who:

 (1) does not charge for entry to the premises; or

 (2) charges for entry onto the premises, but whose total charges collected for
the previous calendar year for all recreational use of the entire premises of the
owner, lessee, or occupant are not more than twice the ad valorem taxes
imposed on the premises for the previous calendar year.


Code § 75.003(c). Parker argues that the limited inclusion of business invitees would naturally
implicate the inclusion of social guests since invitees are owed a higher legal duty. We do not
reach this conclusion. We believe that the purpose of the foregoing section was to expressly
prevent landowners who specialize in commercial recreation from wrongfully taking advantage
of the statute. This supplemental qualification prohibits limiting liability for those occupants who
benefit financially from persons entering the property for recreational purposes. The limited
application of the statute to owners who charge a nominal entrance fee (presumably to defray costs
of maintaining the property) rather than engaging in commercial recreation for profit is consistent
with the overall purpose of the statute: to create and preserve land that the general public may
use for recreational purposes. Section 75.003(c) should be interpreted in light of the statute in its
entirety. 

 In summary, McMillan entered the property with Parker as his social guest. We
conclude that, under the facts of this case, the nature of McMillan's relationship with Parker and
her purpose for entering the property exclude her from the operation of the recreational-use
statute. Since the statute does not apply to McMillan, she is not to be treated as a trespasser for
purposes of determining the duties owed to her by the landowner, Parker. Thus, she necessarily
had the status either of a licensee or an invitee. Whichever of those categories she occupied,
Parker's standard of care toward her was such that the evidence before this Court does not support
summary judgment.


CONCLUSION


 We hold the recreational-use statute inapplicable to this case and sustain point of
error one. In light of this holding, we need not address McMillan's second point of error. We
reverse the trial court's judgment and remand the cause to that court for further proceedings.